# 98 DTA 147

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL III DE ARECIBO Y UTUADO
PANEL I**

PEDRO ISMAEL SANTIAGO RIOS,
SU ESPOSA ANGELICA RODRIGUEZ VAZQUEZ, ET AL
Demandantes-Peticionarios

v.

BANCO DE DESARROLLO ECONOMICO PARA PUERTO RICO;
LIC. ALFREDO CASTRO MESA, ET ALS
Demandados-Recurridos

Núm. KLCE-97-01176

San Juan, Puerto Rico, a 1ro. de marzo de 1998

Panel integrado por su Presidenta, Juez señora Rivera de Martínez
y los Jueces señor Soler Aquino y señor Rivera Pérez

Rivera Pérez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el presente recurso se solicita de esta Curia la revocación de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado, el 17 de septiembre de 1997, notificada a las partes el 18 de septiembre de 1997. En la referida resolución, el Tribunal de Primera Instancia declaró con lugar una moción de desestimación presentada por la parte demandada recurrida y determinó que dicha parte se encuentra impedida de alegar la nulidad de las escrituras número 49 y 50 del 6 de diciembre de 1991, otorgadas ante el notario Alfredo Castro Mesa. No estando conforme con dicha determinación, la parte demandante peticionaria acude ante nos. No le asiste la razón. Se expide

el auto solicitado y se confirma la resolución recurrida.

# I

Para una mejor comprensión de la controversia que hoy nos ocupa, debemos examinar los hechos que dieron lugar al caso civil número LDP 93-0003, *Santiago Ríos, et al v. Vázquez Reichard, et al,* y la sentencia allí dictada. ■ Veamos.

En el año 1991, los aquí peticionarios concertaron la venta de ciertas fincas de su propiedad con el señor Juan Vázquez Reichard, en adelante el comprador. Se acordó que el precio de una de las fincas sería de ciento cincuenta mil ($150,000) dólares y el precio de otra de ellas sería de cincuenta mil ($50,000) dólares. Por motivo del anterior acuerdo, el comprador procedió a solicitar un préstamo al Banco de Desarrollo Económico por la cantidad de ciento sesenta mil ($160,000) dólares, los cuales serían utilizados para la compra de las referidas propiedades. Así las cosas, el Banco de Desarrollo Económico contrató al notario Alfredo Castro Mesa, para que preparara el cierre del mencionado préstamo, el cual se llevó a cabo el día 6 de diciembre de 1991. En dicha fecha el comprador recibió, en calidad de préstamo, por parte del Banco de Desarrollo Económico la cantidad de ciento veinte mil ($120,000) dólares para ser utilizados en la compra de las referidas propiedades. El 6 de diciembre de 1991, la parte peticionaria y el comprador otorgaron ante el notario Alfredo Castro Mesa las escrituras número 49 y 50, correspondientes a la compraventa de las fincas, propiedad de los peticionarios. ■ Para la misma fecha y ante el mismo notario se otorgaron las escrituras número 51 y 52, mediante las cuales el comprador garantizaba con hipoteca sobre las referidas fincas ciertos pagarés otorgados a favor del Banco de Desarrollo Económico para Puerto Rico. Como resultado de dicha transacción de compraventa, el comprador, señor Vázquez Reichard, quedó con una deuda a favor de los peticionarios por la cantidad de sesenta mil ($60,000) dólares. Posteriormente el comprador, señor Vázquez Reichard, vendió las referidas fincas al señor Jorge Ostolaza.

En el año 1993, los peticionarios procedieron a radicar ante el Tribunal de Primera Instancia una demanda en cobro de dinero en contra del señor Juan Vázquez Reichard, el señor Jorge Ostolaza, su esposa, y la sociedad legal de gananciales compuesta por ambos. ■ En la referida demanda se alegaba que los allí demandados le adeudaban solidariamente a los demandantes, aquí peticionarios, la cantidad de sesenta mil ($60,000) dólares de principal, más intereses legales. El 13 de abril de 1994, el demandante solicitó que se dictara sentencia sumaria parcial en contra de uno de los codemandados, señor Juan Vázquez Reichard, la cual fue declarada con lugar por el Tribunal de Primera Instancia, mediante sentencia de 12 de julio de 1994. ■ El 16 de septiembre de 1994, la parte demandante radicó una moción de ejecución de sentencia, razón por la cual dicho Tribunal ordenó que se procediera al embargo de las propiedades. Dicha acción fue posteriormente paralizada por el Tribunal de Primera Instancia, ya que el demandado, señor Juan Vázquez Reichard, se había acogido a la Ley de Quiebras. Posteriormente, los demandantes radicaron una moción de sentencia sumaria contra el otro co-demandado, señor Jorge Ostolaza, la cual fue declarada no ha lugar por el Tribunal de Primera Instancia. Cabe señalar, que luego de estos hechos y desde el 24 de mayo de 1995, no ha ocurrido ningún otro incidente relacionado al referido caso LDP-93-0003.

Así las cosas, el 26 de octubre de 1995, los peticionarios radicaron ante el Tribunal de Primera Instancia, Sala Superior de Utuado, demanda contra los co-demandados, Banco de Desarrollo Económico, el licenciado Alfredo Castro Mesa y el Fondo de Fianza Notarial, en adelante la parte demandada recurrida. ■ En dicha demanda se alegó, en parte, que los recurridos actuaron negligentemente al permitir que no se garantizara el dinero no pagado a los peticionarios. En la misma se solicitó, en parte, que: (a) se decretara la nulidad de las escrituras número 49, 50, 51 y 52 otorgadas el 6 de diciembre de 1991, ante el notario Alfredo Castro Mesa; (b) se condenara a los demandados al pago, de forma solidaria, de la cantidad de sesenta mil ($60,000) dólares; (c) se ordenara la restitución de la posesión de las propiedades envueltas a los demandantes.

Señalada la fecha para la celebración de la conferencia con antelación al juicio, las partes prepararon y firmaron el Informe sobre Conferencia Preliminar entre Abogados. ■ En el mismo expresamente se señaló como una de las controversias del caso de epígrafe *"si la acción está prescrita y/o si es cosa juzgada"*. Según se desprende de las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, en la conferencia con antelación al juicio celebrada el 25 de febrero de 1997, la parte aquí recurrida, el licenciado Alfredo Castro Mesa, mencionó por primera vez en los

procedimientos del caso de epígrafe la existencia de un litigio previo relacionado al de autos, solicitando que el mismo se uniera a éste. A la anterior petición la parte aquí peticionaria no presentó objeción alguna. Dado lo anterior, el Tribunal de Primera Instancia resolvió admitir el Informe sobre Conferencia Preliminar entre Abogados, sujeto a las enmiendas que pudieran surgir luego de examinado el expediente del pleito anterior.

Luego de varios incidentes procesales, el 3 de julio de 1997, el co-demandado recurrido, licenciado Alfredo Castro Mesa, radicó una moción de desestimación basada en las doctrinas de impedimento colateral por sentencia y actos propios. █

Posteriormente, los restantes co-demandados radicaron, a su vez, mociones de desestimación basándose en los mismos fundamentos. █

El 17 de septiembre de 1997, el Tribunal de Primera Instancia declaró con lugar la moción de desestimación, determinando que la defensa de impedimento colateral por sentencia procedía en el caso de autos y que la parte demandante, aquí peticionaria, estaba impedida de impugnar las referidas escrituras número 49 y 50, por nulidad. █Inconforme con dicha determinación, la parte demandante peticionaria acude ante nos, señalando como errores cometidos por el Tribunal de Primera Instancia los siguientes:

*"Erró el Honorable Tribunal al resolver que los apelados-"NOTARIO"- "BDE" y "FFN" no estaban impedidos de radicar su defensa de cosa juzgada como lo hicieron el 26 de septiembre de 1997.*

*Erró el Honorable Tribunal al resolver que la sentencia dictada en el caso LCD93-0003 de Pedro I. Santiago Ríos y esposa v. Héctor Vázquez Reichard y su esposa --por cobro de dinero-- resolvió que las Escrituras 49 y 50 de 6 de diciembre de 1991 otorgadas por el "NOTARIO" apelado fueron la base de dicha sentencia y que el apelante debido a ese hecho esta [sic] impedido de alegar la nulidad de dichas Escrituras en este caso por constituir cosa juzgada, dicha alegación en el caso LCD93-0003.*

*Erró el Honorable Tribunal al resolver este serio asunto de cosa juzgada donde hay que evaluar prueba subjetiva de todas las partes en el pleito, estados mentales, capacidad intelectual y mental de el [sic] apelante, así como el conocimiento que el apelante tenía sobre los negocios entre el "BDE" y el "NOTARIO" mediante un simple procedimiento de SENTENCIA SUMARIA.*

*Erró el Honorable Tribunal al segregar una causa de acción ejercitada por el apelante en dos causas de acción, como si existiera de forma separada una de la otra.*

*Erró el Honorable Tribunal al no permitir probar ante el Tribunal que el "BDE" y el "NOTARIO" sin el consentimiento de el [sic] apelante postergara la deuda pendiente de pago sin informar al apelante sobre dicho asunto."*

## II

El primer señalamiento de error plantea como errada la determinación del Tribunal de Primera Instancia permitiendo la presentación de una nueva defensa afirmativa por parte de los demandados, aquí recurridos, la cual no había sido presentada en las contestaciones a la demanda.

La Regla 10.1 de las de Procedimiento Civil █ dispone que la parte demandada debe presentar contestación a la demanda dentro de los veinte (20) días de haber sido emplazado o dentro de los treinta (30) días de haberse publicado el edicto, cuando el emplazamiento haya procedido de esa forma. La Regla 10.2, █ por su parte, indica que toda defensa de hecho o de derecho contra una reclamación en cualquier alegación, debe ser presentada en la alegación respondiente que se haga a las mismas o mediante moción debidamente fundamentada, cuando se trate de cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. Debemos comenzar señalando que cualquier parte en un

pleito puede enmendar sus alegaciones responsivas sin permiso del tribunal, cuando no hayan transcurrido aún veinte (20) días desde la notificación de la alegación. ■ En las demás situaciones una parte podrá enmendar su alegación *"...únicamente con permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera".* ■ La liberalidad en la concesión de permisos para enmendar alegaciones y alegaciones respondientes, se ha dicho que será aplicable aun en los casos en que el pleito se encuentre en etapas avanzadas del procedimiento. ■ De igual forma debemos señalar, que si bien es cierto que por virtud de la Regla 10.8 de las de Procedimiento Civil ■ la defensa de cosa juzgada se entiende renunciada si no se presenta según las disposiciones de la Regla 10.2, *supra,* nuestro más Alto Foro ha señalado que cuando una defensa surge como resultado del descubrimiento de prueba realizado, procederá la enmienda a la alegación responsiva, con permiso del tribunal, siempre que se demuestre que la parte que la solicita ha sido diligente y que no causará perjuicio a la otra parte en términos de la obtención de una solución justa, rápida y económica. ■

En el caso de autos la parte aquí recurrida, el licenciado Alfredo Castro Mesa, quien no fue parte del pleito anterior, advino en conocimiento del mismo durante los trámites de descubrimiento de prueba. Es por ello, que el Tribunal de Primera Instancia hizo la aclaración durante la celebración de la conferencia con antelación al juicio, que se aceptaba el Informe Preliminar entre Abogados sujeto a las enmiendas que pudieran surgir luego de examinado el expediente del caso anterior. A ello, el peticionario no presentó objeción alguna. Indica en la resolución recurrida el Tribunal de Primera Instancia, que lo que sucede en el caso de marras es que a pesar de nunca haberse solicitado propiamente una enmienda a la contestación a la demanda, la moción de desestimación de la demanda presentada tuvo ese efecto. Dicho Tribunal tenía discreción para aceptar una enmienda a la contestación, ya fuera mediante la presentación de una solicitud de enmienda a la contestación a la demanda propiamente, o mediante la presentación de una moción de desestimación planteando la referida defensa de cosa juzgada. De igual forma, el Tribunal de Primera Instancia tenía discreción para acoger dicha moción de desestimación como una de sentencia sumaria. ■ No consideramos que la actuación del Tribunal de Primera Instancia sea contraria a derecho, ni que haya mediado abuso de discreción en la misma. No se cometió el error señalado.

En cuanto al segundo señalamiento de error, el cual ataca la procedencia de la aplicación de la doctrina de cosa juzgada al caso de marras, no consideramos que el mismo se haya cometido.

En nuestra jurisdicción, la doctrina de cosa juzgada tiene su génesis en el Artículo 1204 del Código Civil, el cual dispone como sigue:

*"Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron."*

El principio de cosa juzgada es uno fundado en consideraciones de orden público y de necesidad, ■ siendo su propósito el proveer seguridad jurídica. ■ Dicha doctrina persigue poner fin a los litigios, luego de ser adjudicados en forma definitiva por los tribunales, y garantizar de este modo la certidumbre y la seguridad de los derechos declarados por dictámenes judiciales, evitando a su vez gastos adicionales al Estado y a los litigantes. ■ La aplicación de cosa juzgada tiene el efecto de impedir que en un pleito posterior se litiguen cuestiones que ya fueron o que pudieron haber sido litigadas y adjudicadas en un caso anterior. ■

Al evaluar la aplicación de cosa juzgada, la palabra causa significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas. ■ En cuanto al requisito de identidad de cosas, para la aplicación de esta doctrina, se ha dicho que aunque puede tratarse de una absoluta identidad, en el sentido de que en el segundo pleito se refiera a la finca u objeto mismo sobre el que versó el primero, por lo general basta que se refiera al mismo asunto. Ello a pesar de que en uno se abordase totalmente y sólo parcialmente en el otro, y aunque las cosas hayan sufrido disminución o alteración, desde el primero al segundo, de forma que se haya visto afectado su valor o alguna otra de sus condiciones. ■ En cuanto al requisito de identidad de las personas de los litigantes, se entiende que hay identidad siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que

establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas. 

Una de las modalidades de la doctrina de cosa juzgada es la denominada impedimento colateral por sentencia. La diferencia básica entre ambas es que la doctrina de impedimento colateral no depende de que se configure el requisito de identidad de causas, lo cual es indispensable para la aplicación de la defensa de cosa juzgada. 

La doctrina de impedimento colateral por sentencia tiene, a su vez, dos modalidades: cuando se levanta ofensivamente o cuando se levanta defensivamente. En la modalidad defensiva un demandado la invoca como defensa para impedir la litigación de un asunto ya planteado y perdido por el demandante en un pleito anterior. En la ofensiva el demandante la levanta para impedir al demandado relitigar aquellos asuntos previamente litigados y perdidos. La característica común de ambas modalidades de la defensa del impedimento colateral por sentencia, es que la parte contra la cual se interpone la defensa litigó en el pleito anterior y perdió. 

Examinada la anterior normativa, procedemos a evaluar si en el caso de marras se dan los requisitos para la aplicación de la doctrina de impedimento colateral por sentencia, comenzando con el de identidad de partes. Veamos.

En el primer pleito, el señor Pedro I. Santiago Ríos, su esposa Angélica Rodríguez, y la sociedad legal de gananciales compuesta por ambos, reclamaban, en calidad de vendedores acreedores, al señor Juan Vázquez Reichard, en calidad de comprador deudor, y al señor Jorge Ostolaza Robles, su esposa y la sociedad legal de gananciales compuesta por ambos, en calidad de propietarios de las fincas envueltas. El caso de epígrafe incluye las mismas partes, las cuales litigan en la misma calidad que en el pleito anterior. La presente causa incluye además como co-demandados al Banco de Desarrollo Económico para Puerto Rico, al licenciado Alfredo Castro Mesa y al Fondo de Fianza Notarial. Consideramos, que en efecto la identidad de partes requerida por la doctrina de impedimento colateral por sentencia existe. De igual forma existe identidad de *"cosas"* entre los dos pleitos, ya que ambas acciones tienen como objeto el negocio jurídico de compraventa habido entre el demandante peticionario y el recurrido, señor Juan Vázquez Reichard. A pesar de que en el primer pleito se reclamaba el pago de una deuda por incumplimiento y en el presente la nulidad de unas escrituras, pudiendo, por tanto, interpretarse que no se da el requisito de identidad de causas, como mencionáramos anteriormente, dicho requisito no es necesario para la aplicación de la doctrina de impedimento colateral por sentencia.

Es imperativo señalar, que si bien es cierto que del expediente del caso de autos no surge que las partes en el pleito anterior litigaran específicamente sobre la validez o nulidad de las escrituras de compraventa en controversia, es evidente que para poder dictar sentencia en el pleito anterior, como se hizo, decretando el derecho del peticionario a que le fuera pagada la deuda reclamada, fue debido a que dichos documentos de compraventa se consideraron y aceptaron como válidos, tanto por las partes, como por el Tribunal. No nos persuade el argumento del peticionario al efecto de que al haberse declarado en el anterior pleito que se adeudaba una cantidad de dinero, a pesar de que en las escrituras se indicaba que el mismo había sido recibido previamente, demuestra que en el pleito anterior el Tribunal no dio por válidas las escrituras. Discrepamos. Si el antiguo Tribunal Superior no hubiese considerado como válidas tales escrituras, el negocio contenido en las mismas hubiera corrido igual suerte, y la disposición que del caso se efectuara no hubiese sido declarar con lugar la acción en cobro de dinero, sino ordenar a las partes la restitución de las prestaciones realizadas, en virtud del contrato de compraventa realizado. Dado lo anterior, concluimos que estuvo correctamente determinado por el Tribunal de Primera Instancia la procedencia de la aplicación de la doctrina de impedimento colateral por sentencia en el caso de marras.

En adición a lo antes expuesto, debemos señalar que la parte peticionaria se encuentra impedida de reclamar la nulidad de las escrituras en controversia, por ser también de aplicación al caso de autos la doctrina de actos propios o estoppel.

La doctrina de actos propios postula, que una vez una parte ha asumido una conducta con la cual creó un estado de derecho que ganó la confianza de una tercera persona, quien descansa y actúa a base

de ésta, se ve luego impedido de asumir una posición contradictoria a la que previamente había representado. Constituyen, por tanto, los presupuestos necesarios para la aplicación de la norma jurídica de que nadie puede actuar contra sus propios actos: (a) una conducta determinada de un sujeto; (b) que haya engendrado una situación contraria a la realidad, ésta es aparente, y mediante tal apariencia, susceptible de influir en la conducta de los demás; y (c) que sea base de la confianza de otra parte que haya procedido de buena fe, y que por ello haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. ■■ Se ha reconocido jurisprudencialmente que la doctrina de actos propios no será de aplicación, cuando sea contrario a la política pública de algún estatuto o de la Constitución. ■■

No surge del expediente ante nos, que durante los procedimientos del pleito anterior la parte peticionaria realizara alegación alguna sobre la nulidad de las escrituras número 49 y 50. El antiguo Tribunal Superior, Sala de Utuado, procedió a dictar sentencia sumaria contra el demandado en ese caso, resolviendo que éste debía pagar la cantidad de sesenta mil ($60,000) dólares. Fue, por tanto, partiendo de la premisa que las mencionadas escrituras eran válidas, así como el negocio jurídico contenido en las mismas, que el peticionario obtuvo la referida sentencia. No fue hasta el momento en que el deudor, señor Vázquez Reichard, se declaró en quiebra que los peticionarios acudieron al Tribunal de Primera Instancia a plantear el asunto de la nulidad de las referidas escrituras. El que dicha parte hoy alegue la nulidad de las escrituras en controversia constituye una posición diametralmente opuesta a la que presentó en el anterior pleito. Nuestro ordenamiento jurídico considera un acto ilícito el que una persona, ya sea natural o jurídica, obre en contra de sus propios actos.

En cuanto al tercer señalamiento de error, el cual plantea que erró el Tribunal de Primera Instancia al resolver la controversia del caso de marras por la vía sumaria asiste la razón a la parte peticionaria.

Debemos comenzar señalando que la Regla 10.2 de las de Procedimiento Civil ■■ provee para cuando una parte presente una moción de desestimación intentando controvertir los hechos expuestos en la demanda, la misma sea considerada por el tribunal como una moción de sentencia sumaria.

El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surja que no existen controversias genuinas de hechos materiales, restando únicamente la aplicación del derecho a los hechos. ■■

La Regla 36.2 de las de Procedimiento Civil ■■ permite a un demandado presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. ■■

La Regla 36.3 de las de Procedimiento Civil, ■■ por su parte, prescribe el procedimiento relativo a una solicitud de sentencia sumaria. Dicha regla dispone como sigue:

*"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."*

Es norma conocida que aquella parte que solicita el dictamen de una sentencia sumaria tiene la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente, que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. ■■ Para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada

por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. █

Al dictar sentencia sumaria, el tribunal debe analizar los documentos que acompañan la moción que la solicita, así como los documentos incluidos en la moción en oposición a la misma y aquellos que obran en el expediente. No procederá el dictamen de una sentencia por la vía sumaria, cuando el Tribunal determine que: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o, (4) como cuestión de derecho no procede. █ Tratándose de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser utilizado de forma mesurada. █ Para resolver dicha solicitud, el tribunal estará impedido de realizar cualquier determinación que conlleve dirimir cuestiones de credibilidad, █ y cualquier duda debe resolverse en contra de la parte promovente. █

En el caso de autos, los hechos que el Tribunal de Primera Instancia consideró como no controvertidos son los que surgen propiamente de lo que se resolvió mediante sentencia válida, final y firme en el primer pleito habido entre las partes. Esto es, que se otorgaron unas escrituras de compraventa; que se acordó un precio por determinadas fincas; que a pesar de que en las referidas escrituras se indicaba que ciertas cantidades habían sido entregadas al vendedor, aquí peticionario, ello no reflejaba la realidad de lo sucedido; y que, por tanto, la parte allí demandada, aquí recurrida, señor Juan Vázquez Reichard aún adeudaba la cantidad de $60,000 al aquí peticionario. La anterior relación de hechos no fue controvertida mediante la declaración jurada aludida, ya que los mismos surgen de una sentencia que, como mencionáramos, es válida, final y firme. No existiendo controversia real de hechos y al concluir que procede, como cuestión de derecho, la aplicación de la doctrina de impedimento colateral por sentencia y la de actos propios, estuvo correcta la determinación del Tribunal de Primera Instancia al declarar con lugar las mociones de desestimación presentadas por los recurridos, en lo que respecta a la solicitud de nulidad de las escrituras número 49 y 50.

Como cuarto señalamiento de error, los peticionarios plantean que erró el Tribunal de Primera Instancia al segregar la causa de acción. Al argumentar dicho planteamiento la parte peticionaria no cita ni hace alusión a ninguna fuente de derecho que apoye su posición. La peticionaria simplemente se limita a señalar que la causa de acción solicitando el decreto de nulidad de las escrituras número 49, 50 , 51 y 52 es una sola; que dichas escrituras fueron realizadas el mismo día y están relacionadas entre sí.

Las escrituras número 49 y 50, según se ha discutido previamente, contienen el negocio jurídico de compraventa de dos (2) fincas. Por su parte, las escrituras número 50 y 51 contienen el negocio jurídico de la constitución de dos hipotecas sobre las anteriores fincas, como garantía de una deuda. [40] Las partes envueltas en las escrituras número 49 y 50 lo son la parte peticionaria, como vendedor, y la parte recurrida, señor Juan Vázquez Reichard, como comprador. Las partes envueltas en las escrituras número 51 y 52, lo son el señor Juan Vázquez Reichard, como deudor hipotecario, y el Banco de Desarrollo Económico para Puerto Rico, como acreedor hipotecario.

Conforme a lo discutido en nuestra opinión, el reclamo de nulidad de las escrituras número 49 y 50 es improcedente en derecho, dado que la peticionaria previamente había litigado sobre la transacción contenida en las mismas, sin haber realizado alegación alguna sobre su validez. En cuanto a las escrituras número 51 y 52, nada se ha determinado aún por el Tribunal de Primera Instancia, por lo que nos vemos impedidos de entrar en los méritos de las reclamaciones que realiza la parte peticionaria sobre las mismas. Lo que sí podemos señalar en este momento es que estuvo correcta la determinación del Tribunal de Primera Instancia desestimando la causa de acción, en lo relativo a la solicitud sobre nulidad de las escrituras número 49 y 50. El efecto que dicha determinación tenga sobre la alegación de nulidad de las escrituras número 51 y 52, deberá ser evaluado por el Tribunal de Primera Instancia en su momento. De hecho, la resolución recurrida indica en su último párrafo que la parte demandante, aquí peticionaria, tendrá un término de treinta (30) días para informar al Tribunal cuál es su posición en cuanto a las alegaciones referentes a las escrituras número 51 y 52. No vemos cómo la determinación del Tribunal de Primera Instancia decretando a la peticionaria como impedida de plantear la nulidad de dos de las cuatro escrituras envueltas, y la determinación de otorgar un término para que dicha parte se exprese en cuanto a las alegaciones relativas a las restantes escrituras

es contraria a derecho.

Finalmente, plantea el peticionario en su quinto señalamiento de error que el Tribunal de Primera Instancia no le permitió probar las alegaciones referentes a los co-demandados recurridos, Banco de Desarrollo de Puerto Rico y licenciado Alfredo Castro Mesa. En cuanto al anterior planteamiento resolvemos dos cosas: (a) las alegaciones que la parte peticionaria presenta contra los recurridos, Banco de Desarrollo Económico de Puerto Rico y licenciado Alfredo Castro Mesa, a los únicos efectos y con el único propósito de conseguir un decreto de nulidad de las escrituras número 49 y 50, son improcedentes en derecho, por ser aplicable a las mismas la doctrina de estoppel; (b) en cuanto a las restantes alegaciones nada ha resuelto aún el Tribunal de Primera Instancia, por lo que nos vemos impedidos de expresarnos sobre éstas.

## III

Por los fundamentos que anteceden, y no habiéndose cometido los errores señalados, se expide el auto solicitado y se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 147**

**1.** Dicho caso fue atendido por el antiguo Tribunal Superior, Sala de Utuado, y resuelto mediante sentencia de 12 de julio de 1994.

**2.** Apéndices X y XI, págs. 44-49 del recurso de *certiorari*.

**3.** Apéndice XXXIII, págs. 157-158, *Ibid*.

**4.** Apéndice XXXIV, págs. 159-163, *Ibid*.

**5.** Apéndice VI, págs. 30-33, *Ibid*.

**6.** Apéndice XXVI, págs. 128-132, *Ibid*.

**7.** Apéndice XXVII, págs. 133-136.

**8.** Apéndice XXIX y XXX, págs. 146-150, *Ibid*.

**9.** Apéndice I, págs. 1-14, *Ibid*.

**10.** 32 L.P.R.A. Ap. III, R. 10.1.

**11.** 32 L.P.R.A. Ap. III, R. 10.2.

**12.** Regla 13.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 13.1.

**13.** *Ibid*.

**14.** *Pérez v. Hospital La Concepción,* 115 D.P.R. 721 (1984).

**15.** 32 L.P.R.A. Ap. III, R. 10.8.

**16.** *Texaco v. Díaz,* 105 D.P.R. 248 (1976), citando a *Epifanio Vidal, Inc. v. Suro,* 103 D.P.R. 793 (1975).

**17.** Regla 10.2 de las de Procedimiento Civil, *supra.*

**18.** *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753 (1981).

**19.** *Pérez v. Bauzá,* 83 D.P.R. 220 (1961).

**20.** *Worldwide Food Distributors, Inc. v. Colón Bermúdez,* 135 D.P.R. ___ (1993), **93 J.T.S. 114,** opinión del 30 de junio de 1993.

**21.** *Rodríguez v. Colberg Comas,* 132 D.P.R. __ (1992), **92 J.T.S. 102,** opinión de 30 de junio de 1992.

**22.** *Ibid.*

**23.** *Ibid.* ·

**24.** *Ibid.*

**25.** *Pereira v. Hernández,* 83 D.P.R. 160 (1961).

**26.** *A & P Gen. Contractors v. Asoc. Caná, supra.*

**27.** *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871 (1976).

**28.** *J.R.I. v. Hospital de la Concepción,* 114 D.P.R. 372 (1983).

**29.** 32 L.P.R.A. Ap. III, R. 10.2.

**30.** *Hurtado Latre v. Osuna,* 138 D.P.R. ___ (1995), **95 J.T.S. 98,** opinión de 30 de junio de 1995; *PFZ Properties, Inc. v. General Accident Insurance Co.,* 136 D.P.R. __ (1994), **94 J.T.S. 116,** opinión de 7 de septiembre de 1994.

**31.** 31 L.P.R.A. Ap. III, R. 36.2.

**32.** *Soto v. Hotel Caribe Hilton,* 139 D.P.R. __ (1994), **94 J.T.S. 128,** opinión de 17 de octubre de 1994.

**33.** 32 L.P.R.A. Ap. III, R. 36.3.

**34.** *Hurtado Latre v. Osuna, supra; Tello Rivera v. Eastern Airlines,* 119 D.P.R. 83 (1981).

**35.** *PFZ Properties, Inc. v. General Accident Insurance, supra.*

**36.** *PFZ Properties, Inc. v. General Accident Insurance, supra.*

**37.** *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986); *Roth v. Lugo,* 87 D.P.R. 386 (1963).

**38.** *Colegio de Ingenieros y Agrimensores de P.R. v. A.A.A.,* 132 D.P.R. ___ (1992), **92 J.T.S. 137,** opinión de 21 de octubre de 1992.

**39.** *Bonilla Medina v. P.N.P.,* 140 D.P.R. __ (1996), **96 J.T.S. 33,** opinión de 13 de marzo de 1996; *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. __ (1990), **90 J.T.S. 59,** opinión de 30 de abril de 1990.

**40.** Apéndices XII y XIII, págs. 50-63 del recurso de *certiorari.*